**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| JAMES S.,[1] | : | Case No. 1:24-cv-00369 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in May 2021.
Plaintiff's claim was denied initially and upon reconsideration. After a hearing at
Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not
eligible for benefits because he was not under a "disability" as defined in the Social
Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff
subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award
of benefits or, in the alternative, for further proceedings. The Commissioner asks the
Court to affirm the non-disability decision. For the reasons set forth below, this Court
REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management
of the Judicial Conference of the United States has recommended that due to significant privacy concerns
in social security cases federal courts should refer to claimants only by their first names and last
initials.").

I.     BACKGROUND

Plaintiff asserts that he has been under a disability since May 12, 2016. At that

time, he was forty-two years old. Accordingly, Plaintiff was considered a "younger

person" under the Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has

a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in

the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 48-67), Plaintiff's Statement of

Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In

Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather

than repeat these summaries, the Court will discuss the pertinent evidence in its analysis

below.

II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to

individuals who are under a "disability," among other eligibility requirements. *Bowen v.*

*City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a).

The term "disability" means "the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

§ 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries:

"[W]hether the ALJ applied the correct legal standards and whether the findings of the

ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff engaged in substantial gainful activity after the alleged onset date of May 12, 2016, but he has not engaged in substantial gainful activity "since 2018." |
| Step 2: | He has the severe impairments of degenerative disc disease of the lumbar spine, coronary artery disease, status post coronary artery bypass grafting, obesity, attention deficit disorder, and depressive disorder. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[H]e cannot |

4

climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He can interact with co-workers, supervisors and the public on an occasional and superficial basis. He can adapt to occasional workplace changes. He would need to alternate sitting and standing."

He is unable to perform any of his past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 7-2 at PageID 53-63.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 63.)

### B.    Consultative Physician Gary Ray, M.D.

Gary Ray, M.D. performed a consultative physical examination in February 2022. (AR, Doc. No. 7-8 at PageID 1072-81.) In his narrative report, Dr. Ray described Plaintiff's reported medical history and subjective complaints, summarized the medical records that he reviewed, and documented his physical examination findings. (*Id.* at PageID 1072-74, 1077-81.) Plaintiff also underwent lumbar spine x-rays at that time, which showed no evidence of acute fracture or malalignment, but did reveal moderate degenerative disc disease at the L4-5 and L5-S1 levels. (*Id.* at PageID 1076.)

Dr. Ray concluded that the examination findings, medical records, and x-ray results supported diagnoses of moderate degenerative disc disease with no lumbosacral radiculopathy. (AR, Doc. No. 7-8 at PageID 1075.) He noted that Plaintiff's diagnoses included coronary artery disease that required coronary artery bypass grafting but with no evidence of chest pain; obesity; hypothyroidism; hyperlipidemia; hypertension; and

5

depression. (*Id.*) With respect to Plaintiff's work-related limitations, Dr. Ray opined that Plaintiff could lift and carry up to fifteen pounds. (*Id.*) He estimated that Plaintiff could sit for up to thirty minutes at a time, stand for up to one hour at a time, and ambulate for up to thirty minutes at a time. (*Id.*) Dr. Ray noted that Plaintiff could grip and manipulate with his hands "without difficulty." (*Id.*) Dr. Ray also opined that Plaintiff could occasionally bend, stoop, squat, and kneel, and never crawl or climb. (*Id.*)

The ALJ concluded that Dr. Ray's opinion was not persuasive because it was both "inconsistent with Dr. Ray's own examination which was mostly normal" and "inconsistent with the record as a whole." (Decision, Doc. No. 7-2 at PageID 61.) Accordingly, the ALJ formulated an RFC that omitted most of the restrictions and limitations identified by Dr. Ray.

Specifically, the RFC permitted Plaintiff to occasionally (rather than never) crawl, climb ramps and climb stairs. (*Compare* Decision, Doc. No. 7-2 at PageID 57 *with* AR, Doc. No. 7-8 at PageID 1075.) The RFC imposed no restrictions on Plaintiff's ability to walk (which Dr. Ray limited to thirty minutes at a time), carry (which Dr. Ray limited to fifteen pounds), lift (same), bend (which Dr. Ray limited to occasional) or squat (same). (*Id.*) And although the RFC stated that Plaintiff "would need to alternate sitting and standing,"[2] it imposed no restrictions on the duration of Plaintiff's ability to sit (which Dr. Ray limited to thirty minutes) or stand (which Dr. Ray limited to one hour). (*Id.*)

---

[2] The ALJ's sit/stand limitation also did not provide that Plaintiff must be permitted to change positions as needed. Because the parties did not raise or brief the issue of whether this limitation is impermissibly vague, the Court will not address it. However, the Commissioner should consider it upon remand.

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred by improperly evaluating the medical opinion of consultative physician Dr. Ray. (SE, Doc. No. 8 at PageID 1142.) Plaintiff further asserts that the ALJ "did not provide valid rationale for rejecting Plaintiff's testimony pursuant to SSR 16-3p and 20 C.F.R. § 404.1529." (*Id.*) For the reasons discussed below, the Court finds that Plaintiff's first asserted error is well-taken and will therefore reverse and remand the ALJ's decision. The Court does not address Plaintiff's other alleged error and instead instructs the ALJ to address it on remand.

### A.    Applicable Law

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1)

supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[3] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.*

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565,

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.**     **The ALJ Reversibly Erred When Analyzing Dr. Ray's Opinion.**

**1.**     **The ALJ's analysis of the supportability factor is unsupported by substantial evidence.**

The ALJ explained that Dr. Ray's opinion was not supportable because it was "inconsistent with Dr. Ray's own examination, which was mostly normal." It is unclear what "normal" evidence or findings the ALJ intended to base this statement upon. (Decision, Doc. No. 7-2 at PageID 61.) Assuming that the ALJ's explanation satisfied the mandatory articulation requirement for the supportability factor pursuant to 20 C.F.R. § 404.1520c(b)(2) and (c)(1), reversal is nevertheless required because the ALJ's conclusion that Dr. Ray's examination "was mostly normal" is unsupported by substantial evidence.

It is true that Dr. Ray documented some normal examination findings, such as negative straight leg raising, no muscle spasms, no joint abnormalities, intact sensation, and normal range of motion of the upper and lower extremities. (AR, Doc. No. 7-8 at PageID 1074, 1077-79.) Dr. Ray also stated that Plaintiff walked with a normal gait pattern, although he acknowledged that he only observed Plaintiff's ambulation in "the short distance in the office." (*Id.* at PageID 1074.)

However, Dr. Ray also documented several abnormal findings. These included mild tenderness at the right lumbosacral paraspinal muscle area, decreased deep tendon reflexes, and decreased range of motion of the cervical and lumbar spine. AR, Doc. No. 7-8 at PageID 1074, 1077.) Dr. Ray also reported that Plaintiff weighed 200 pounds at a height of sixty-five inches, which indicates obesity.[4] (*Id.* at PageID 1074.) These findings are not "normal," and they do reasonably support Dr. Ray's opinion.

Dr. Ray's comments in his report also support his opinion. He cited Plaintiff's reports of low back and right leg pain, despite two surgeries, and noted that the pain increased "when he is in one position for to [sic] long." (AR, Doc. No. 7-8 at PageID 1072.) Dr. Ray cited Plaintiff's report that anti-inflammatory drugs only "partially help[ed] to lessen the pain." (*Id.*) Dr. Ray also explained that Plaintiff's "history, physical examination, review of the medical records, and x-ray studies [were] most compatible with lumbosacral disc protrusions requiring two surgical procedures and moderate degenerative disc disease at L4-5 and L5-S1." (*Id.* at PageID 1075.)

The medical treatment notes reviewed by Dr. Ray corroborate his conclusions. Neurosurgical progress notes indicate that Plaintiff underwent a two-level discectomy in approximately 2000. (AR, Doc. No. 7-8 at PageID 968.) Plaintiff began complaining of pain in April 2016 after a slip-and-fall. (*Id.*) A lumbar spine MRI showed a right-sided disc herniation with radiculopathy at the L5-S1 level. (*Id.*) Plaintiff underwent a lumbar

---

[4] Plaintiff's measurements result in a body mass index of 33.3, which falls within a range that indicates obesity. *See Calculate Your BMI*, National Heart, Lung, and Blood Institute (August 8, 2021), https://www.nhlbi.nih.gov/calculate-your-bmi [https://perma.cc/VK2E-74XK].

spine microdiscectomy in May 2016. (AR, Doc. No. 7-7 at PageID 913.) Plaintiff

subsequently reported a work-related back injury in July 2017. (*Id*. at PageID 520.) A

February 2018 lumbar spine MRI showed marked, degenerative loss of disc height at the

L4-5 and L5-S1 levels. (*Id.* at PageID 905.)

In May 2018, Plaintiff was hospitalized for chest pain. (AR, Doc. No. 7-7 at

PageID 394.) After cardiac catheterization showed coronary artery disease with occlusion

of the proximal right coronary artery, Plaintiff underwent coronary artery bypass grafting

surgery. (*Id.* at PageID 406, 428.)

Neurosurgical progress notes dated through April 2019 documented Plaintiff's

reports that his back pain "never improved" and that it was difficult to sit or lie down for

long periods of time. (AR, Doc. No. 7-8 at PageID 959; AR, Doc. No. 7-9 at PageID 972,

976.) Physical examinations showed a minimally antalgic gait and restricted lumbar

range of motion. (AR, Doc. No. 7-9 at PageID 974, 978.) Plaintiff reported in April 2019

that his back pain had not changed despite attending "a few rounds" of physical therapy."

(AR, Doc. No. 7-8 at PageID 959.) Plaintiff's neurosurgeon recommended lumbar

epidural steroid injections (*Id.*) Although the record contains no indication that Plaintiff

received the injections and documents no further neurosurgical visits after that time,

Plaintiff testified at the July 2023 hearing that "they won't do [the injections]" and he

was not sure why." (AR, Doc. No. 7-2 at PageID 76.) Plaintiff also testified that he had

not been able to see doctors as much as he would like to "because of not being able to

afford it." (AR, Doc. No. 7-2 at PageID 75.) Moreover, Dr. Ray administered lumbar

spine imaging at the time of the February 2022 consultative examination, and the x-rays

12

showed moderate degenerative disc disease at the L4-5 and L5-S1 levels. (AR, Doc. No. 7-8 at PageID 1076.)

Although this evidence supported Dr. Ray's opinion, the ALJ did not address or acknowledge it when she discounted that opinion. The Court recognizes that ALJs need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show that she "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge myriad evidence that supported Dr. Ray's opinion leads the Court to conclude that the ALJ did not resolve conflicts in the evidence, as she was required to do. Further, the ALJ's apparent failure to consider evidence that contradicts her conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

Accordingly, the ALJ's conclusion that Dr. Ray's opinion was unsupported is itself unsupported by substantial evidence. This constitutes reversible error.

### 2. The ALJ did not sufficiently articulate her analysis of the consistency factor.

The ALJ also stated that she was not persuaded by Dr. Ray's opinion because it was "inconsistent with the record as a whole." (Decision, Doc. No. 7-2 at PageID 61.) However, the ALJ did not explain her conclusion. Specifically, the ALJ did not cite to

13

specific evidence in the record or explain how it conflicted with Dr. Ray's opinion. The ALJ's reference to "the record as a whole," without further explanation, fails to articulate with specificity the reasons for conclusion and "deprives the Court of the ability to conduct any meaningful review." *Edwards v. Comm'r of Soc. Sec.*, No. 3:22-CV-00597, 2023 WL 2988373, at *15 (N.D. Ohio Mar. 10, 2023), *report and recommendation adopted sub nom. Edwards v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-597, 2023 WL 3866333 (N.D. Ohio June 7, 2023) (citing *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 WL 549861, at *5 (S.D. Ohio Feb. 8, 2011) (Barrett, D.J.)). Therefore, the ALJ failed to satisfy the mandatory articulation requirement with respect to the consistency factor. *See* 20 C.F.R. § 404.1520c(b)(2) and (c)(2).

Defendant argues that the ALJ's consistency analysis is sufficient because the ALJ discussed other evidence of record earlier in the decision. (Mem. In Opp., Doc. No. 10 at PageID 1170.) The Court disagrees. Under the regulations for evaluating opinion evidence, ALJs must provide a "minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017); *see also* 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record.") (emphasis added). The articulation requirement extends to ALJs' analyses of the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.") (emphasis added). If

14

courts and claimants must guess at what evidence in the ALJ's decision is included in the supportability and consistency explanations, then the articulation requirement is not met.

Defendant further asserts that the Court should affirm the ALJ's decision because substantial evidence supports the ALJ's conclusions. (Mem. In Opp., Doc. No. 10 at PageID 1172 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).) But without a sufficient articulation of the reasons for the ALJ's conclusion, the Court cannot determine whether substantial evidence supports it. See *Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) (Litkovitz, M.J.) (citing *Ephraim v. Saul*, No. 1:20cv00633, 2021 WL 327755, at *7 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom. Ephraim v. Comm'r of Soc. Sec.*, No. 1:20cv633, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021) ("[A] district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'")). See also *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021) (citing *Blakley*, 581 F.3d at 409) (The ALJ's error requires remand because "without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision.").

Accordingly, the ALJ's failure to properly analyze the consistency of Dr. Ray's opinion pursuant to 20 C.F.R. § 404.1520c constitutes reversible error. This provides another reason why the ALJ's decision shall be reversed and remanded.

## V.     REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion of consultative physician Dr. Ray, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;

2.    The Court REVERSES the Commissioner's non-disability determination;

3.    No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.    This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.    This case is terminated on the Court's docket.

                    *s/ Caroline H. Gentry*
                    Caroline H. Gentry
                    United States Magistrate Judge